IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSHUA TURNER,  )
               Petitioner,  )
    )
vs.  )  Civil Action No. 13-1787
  )  Chief Magistrate Judge Maureen P. Kelly
  )
BRIAN V. COLEMAN; THE ATTORNEY )
GENERAL OF THE STATE OF  )
PENNSYLVANIA,  )
               Respondents.  )

**MEMORANDUM OPINION**

Joshua Louis Turner ("Petitioner"), has filed this pro se Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"), ECF No. 2, seeking to attack his state court conviction for first degree murder in the killing of a nineteen month old child of his then girlfriend. Although the prosecution had sought the death penalty, because the jury found Petitioner to be mentally retarded and, because Atkins v. Virginia, 536 U.S. 304 (2002) prohibits the imposition of the death penalty on individuals with mental retardation, Petitioner was sentenced to life in prison without parole for the first degree murder conviction.

For the reasons that follow, the Petition will be denied because none of the four grounds for relief merits the grant of habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

**I. FACTUAL BACKGROUND**

The Pennsylvania Superior Court described the factual background as follows:

    On October 27, 2008, Kimberly Shirley left her son [L.W.M.] ("victim") nineteen (19) months old, in the sole care of Defendant Turner ("Defendant"),

who resided with her. The Defendant called Ms. Shirley to tell her the victim had tripped, fell and bumped his mouth and head against the wall. Ms. Shirley then returned to her residence and called for medical assistance after finding the victim unconscious.

Upon responding on scene at the residence of Ms. Shirley, emergency medical technicians found the victim completely unresponsive. They also noticed numerous bite marks and contusions on the victim's abdomen and chest, line marks across the victim's throat, and signs of head trauma and irregular respiration. EMTs noticed the victim exhibited poor posturing consistent with head trauma or brain injury. Based on the victim's condition, EMTs suspected physical abuse caused the injuries to the victim. EMTs transported the victim to Indiana Regional Medical Center and later to Pittsburgh Children's Hospital.

Ultimately, the Pennsylvania state police were contacted about the victim's injuries. The state police communication officer contacted Trooper Timothy Lipniskis on October 27, 2008 and advised him that Indiana Regional Medical Center had the victim, who appeared to be assaulted and physically abused. Trooper Lipniskis interviewed Dr. Tomacruz and members of the nursing staff at Indiana Regional Medical Center who stated that the victim appeared to be assaulted and physically abused. Dr. Tomacruz and members of the nursing staff informed Trooper Lipniskis that the victim exhibited signs of bruising, bite marks, and strangulation marks.

On October 27, 2008, Trooper Lipniskis requested Ms. Shirley and Defendant to come to the state police barracks as part of the investigation. Trooper Lipniskis advised Defendant of his Miranda rights and had Defendant read, complete and sign a rights warning and waiver form at 7:37 p.m. Defendant first stated that he accidentally hit the victim's head off a doorframe as he carried the victim. Defendant began to write out a statement to this effect with Trooper Lipniskis out of the interview room.

After Trooper Lipniskis returned to the interview room, he told Defendant the victim's injuries, according to doctors, were not consistent with Defendant's version of what happened. Trooper Lipniskis did not actually speak to any doctor or medical personnel about the victim's injuries while out of the interview room. Defendant subsequently made a second statement that the victim slipped out of his hands, fell to the floor and sustained a head injury. Defendant stated that he then picked up the victim, carried him and accidentally struck his head on a doorframe. Defendant was released and freed to leave on October 27, 2008.

Trooper Lipniskis spoke with Dr. Squires of Pittsburgh Children's Hospital on October 28, 2008. Trooper Lipniskis informed Dr. Squires of Defendant's previous statement that he had dropped the victim on the floor, thus causing injury to victim's head. Dr. Squires informed Trooper Lipniskis that the victim's injuries were not consistent with the Defendant's version of what

2

happened. Dr. Squires indicated that, in her professional medical opinion, an assault and violent altercation with an adult caused the victim's injuries. Dr. Squires believed the victim exhibited signs of being beaten, bruised, bitten and shaken. Dr. Squires also informed Trooper Lipniskis that the bite marks were consistent with adult bite marks.

As a result of Trooper Lipniskis' conversations with Dr. Squires, state police troopers took Defendant into custody on the afternoon of October 28, 2008. State police troopers handcuffed Defendant, transported him to the state police barracks in a state police cruiser, and escorted Defendant into an interview room.

Defendant then made several statements consisting of the following. The victim started to cry, bite and hit the Defendant. Defendant, in response, shook and hit the victim. Defendant also hit the victim in the back and the side of the head. Defendant when he acted understood that what he did was wrong.

Trooper Lipniskis placed Defendant under arrest for aggravated assault after the October 28, 2008 interrogation. On November 1, 2008, Pittsburgh Children's Hospital notified Trooper Lipniskis that the victim had died as a result of his injuries. Trooper Lipniskis then amended the criminal complaint to include a general count of criminal homicide.

Superior Court slip op., ECF No. 14-1 at 1 – 3.

## II. PROCEDURAL HISTORY

Before the trial, Petitioner filed a suppression motion, seeking to have his statements made on October 27, and October 28, 2008, suppressed. The Court of Common Pleas of Indiana County denied the suppression motion, finding that Petitioner had validly waived his Miranda rights and that Petitioner's statements were not a product of his will being overborne by Trooper Lipniskis' deceptions. ECF No. 15-3 at 1 – 30. Petitioner's statements were introduced at trial and Petitioner took the stand in his own defense. The jury found Petitioner guilty of first degree murder but also found that Petitioner suffered from mental retardation. Accordingly, Petitioner was spared the death penalty and the trial court imposed a mandatory sentence of life without parole.

Petitioner filed post sentence motions through Attorney Gary Knaresboro, who represented Petitioner throughout the pre-trial, trial, post-trial and appellate proceedings. As explained below, Attorney Knaresboro also represented Petitioner in his Post Conviction Relief Act ("PCRA") proceedings. The trial court rejected Petitioner's Post-Sentence Motion in Arrest of Judgment and/or for New Trial. ECF No. 16-2 at 1 – 12.

Petitioner filed a direct appeal to the Pennsylvania Superior Court, which affirmed the judgment of sentence. ECF No. 14-1 at 1 – 17.

Thereafter, Petitioner filed a PCRA petition pro se, and Attorney Knaresboro was appointed to represent Petitioner. Attorney Knaresboro filed a Turner/Finley no-merit letter and a motion to withdraw. ECF No. 16-1 at 4 – 11. The PCRA trial court permitted Attorney Knaresboro to withdraw and informed Petitioner that he could proceed with privately retained counsel or pro se.

No appeal to the Pennsylvania Superior Court was taken.

Petitioner, proceeding pro se, filed the instant Petition in this Court, raising the following four grounds for relief:

> **GROUND ONE:** Whether the trial court erred by denying the defendant's pretrial motion to suppress statements made during the police interrogation.

ECF No. 2 at 5.

> **GROUND TWO**: Whether the PCRA Court erred in Failing [sic] to hold that sentencing defendant to a mandatory term of life without parole violated defendant's 8th Amendment rights.

Id. at 7.

> **GROUND THREE:** Whether the PA Courts' review of Petitioner's PCRA, where independent counsel was not appointed, was conducted in a manner that was fundamentally inadequate to vindicate the liberty interest afforded by the PCRA statute and thereby violated his right to due process.

Id. at 8.

> **GROUND FOUR:** Whether PCRA Counsel was ineffective for failing to raise the issue of whether trial counsel was ineffective for failing to present evidence during the guilt phase that defendant could not form the specific intent to kill.

Id. at 10. Petitioner also filed a Memorandum of Law in Support. ECF No. 3.

The Court ordered Respondents to file an Answer. Respondents filed their Answer, ECF No. 13, denying that Petitioner was entitled to any relief. Respondents also filed copies of much of the state court record. ECF Nos. 14 – 32; 34 – 57. All parties have consented to the United States Magistrate Judge's exercise of plenary jurisdiction. ECF Nos. 59, 60.

### III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision

5

"involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

In Ground One, Petitioner contends that the trial court erred in denying his pre-trial motion to suppress his statements to Trooper Lipniskis because Trooper Lipniskis lied to Petitioner during the course of the interrogation which allegedly caused Petitioner's will to be overborne. ECF No. 1 at 5 ("The trial court failed to account for the fact that the defendant is mentally retarded when deciding that the defendant had not been overborn by the deceptive interrogation tactics used by the police in this case.").

#### 1. Trial Court's Reasoning.

The trial court conducted a hearing on the suppression motion and made credibility determinations: "[t]he Court accepts as credible the testimony of Trooper Lipniskis and rejects as not credible the testimony of Defendant Turner at the hearing held on Defendant's Omnibus Pre-trial Motions on October 20, 2009." ECF No. 15-3. The trial court then went on to address Petitioner's contention that his will was overborne by Trooper Lipniskis' lies to him, which Petitioner contends is due to the fact of Petitioner's mental retardation, even if the wills of others who do not suffer from mental retardation might not have been overborne.

The trial court conducted a thorough analysis of Petitioner's claim, finding that Petitioner was in custody and that Trooper Lipniskis interrogated Petitioner such that Petitioner was

entitled to have his Miranda warnings and that those Miranda warnings were in fact given prior to the interrogation of Petitioner and that Petitioner freely, intelligently and voluntarily waived his Miranda rights. Id. at 13 - 17. Petitioner has not shown that this disposition was either an unreasonable determination of the facts or contrary to or an unreasonable application of United States Supreme Court precedent on Miranda warnings and custodial interrogation.

The trial court then went on to address the issue of whether Trooper Lipniskis' tactics of misleading Petitioner amounted to police coercion of Petitioner's statements/confession. Id. at 17 – 23. The trial court noted that "[o]nce an individual has been told of his or her Miranda rights, any statement elicited from him or her during a continuing interrogation is inadmissible in evidence against him or her, unless the totality of the circumstances surrounding the interrogation indicates that the accused in fact knowingly and voluntarily decided to forgo his or her Miranda rights." Id. at 18. The trial court then went on to note that

> [f]actors that affect the validity of the waiver of Miranda rights include: (1) the duration and methods of interrogation; (2) the conditions of detention; (3) the manifest attitude of the police toward the accused; (4) the accused's physical and psychological state; and (5) any conditions which may serve to drain one's powers of resistance to suggestion and undermine one's self determination.

Id. at 20. Considering all of the foregoing factors, the trial court then went on to find that Petitioner's statements were not the product of coercion.

> Applying the above law, the Court finds that Defendant's waiver of his Miranda rights was knowing and voluntary and not the product of police coercion. The totality of the circumstances indicates that the Defendant in fact knowingly and voluntarily decided to forgo his Miranda rights and make the statements to Trooper Lipniskis. Trooper Lipniskis fully apprised Defendant of his Miranda rights and Defendant knowingly and voluntarily made the decision to waive those rights. Thus, Defendant's statements on October 27, 2008[1] were not the end

---

[1] The trial court separately analyzed the statements that Petitioner gave to the Trooper on October 27, 2008 and on October 28, 2008 but the legal analysis was essentially the same. The Trial Court's analysis of Petitioner's October 28, 2008 statements is found at ECF No. 15-3 at 23 – 27.

7

result of undue pressure by Trooper Lipniskis and were made by Defendant with full comprehension of the nature of the rights being abandoned and the consequences of that choice.

Although Trooper Lipniskis admittedly informed Defendant of a misleading statement during the time Defendant was writing his first statement, the Court relies on *Boggs* for the authority that "ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within Miranda's concerns. *Boggs*, 695 A.2d at 842. The Court finds that Trooper Lipniskis' use of a misleading statement during the questioning of Defendant was not so manipulative or coercive that it deprived the Defendant of the ability to make a free and unconstrained decision to confess. Therefore, the Court finds that Trooper Lipniskis' misleading statement to Defendant that doctors informed Trooper, while he was out of the interview room and Defendant was writing his first statement, that the victim's injuries were not consistent with the Defendant's version of what happened does not rise to the level of compulsion or coercion and thus are not within Miranda's concerns.

Id. at 22 – 23. Subsequently, the Superior Court affirmed the trial court. ECF No. 14-1 at 6 – 13.

### 2. Petitioner fails to show that the trial court's reasoning was contrary to or an unreasonable application of Supreme Court precedent.

Petitioner fails to show that the trial court's reasoning was contrary to or an unreasonable application of United States Supreme Court precedent on Fifth Amendment Miranda rights or voluntary confessions/statements.[2] Indeed, we find the foregoing to not be contrary to or an unreasonable application of United States Supreme Court precedent. Frazier v. Cupp, 394 U.S. 731, 739 (1969) ("The fact that the police misrepresented the statements that Rawls had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.

---

[2] While it is generally true that for habeas purposes, the Federal Court reviews the last reasoned decision of the state courts, Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009) ("In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims"), because Petitioner focuses his attack on the trial court's opinion and its reasoning, we will address the arguments Petitioner makes, and we simply note that the Superior Court's decision, affirming the trial court, mirrors, for the most part, the reasoning of the trial court.

8

These cases must be decided by viewing the 'totality of the circumstances,' and on the facts of this case we can find no error in the admission of petitioner's confession.").

To the extent that Petitioner argues that Trooper Lipniskis' use of deception was per se a violation of Miranda or a per se cause of his statements to be coerced, Petitioner is simply wrong on the law. Id.; United States v. Velasquez, 885 F.2d 1076, 1087-88 (3d Cir. 1989) ("Aside from her psychological problems, the only factor supporting a finding that her waiver was not voluntary was [Agent] Glanz's false statement to Velasquez about Terselich making a statement against her and being set free. . . . We have stated that '[w]hile a lie told to the detainee about an important aspect of the case may affect the voluntariness of the confession, the effect of the lie must be analyzed in the context of all the circumstances of the interrogation.'")(quoting Miller v. Fenton, 796 F.2d 598, 607 (3d Cir. 1986)); Evans v. Phelps, No. CIV.A. 10-92-LPS, 2012 WL 1134482, at *10 (D. Del. Apr. 2, 2012) ("The Supreme Court has noted a distinction between police trickery as a means of coercion and police trickery as mere strategic deception; '[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda 's* concerns.' *Illinois v. Perkins*, 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). In other words, a law-enforcement agent may use some psychological tactics or even actively mislead a defendant in order to obtain a confession, provided that a rational decision remains possible.").

### 3. Petitioner cannot show that the trial court unreasonably determined facts.

To the extent that Petitioner argues that the trial court erred as a matter of fact in finding that Trooper Lipniskis' use of deception did not cause Petitioner's statements to be coerced, Petitioner fails to rebut the factual determinations of the trial court by pointing to any evidence other than perhaps the fact of his mental retardation. Petitioner seemingly argues that the trial

9

court failed to take into consideration the fact of his mental retardation. Petitioner even contends that "Turner is mentally retarded and can be easily misled or confused. Although evidence and testimony of Turner's mental retardation was not provided at the Pretrial Motion to Suppress, it was subsequently presented at trial. The evidence and testimony was not presented at the pretrial motion hearing because Attorney Knaresboro had not yet obtained Turner's Kentucky school records and a psychologist had not been appointed by court to examine Turner at that time." ECF No. 3 at 14.

Petitioner is mistaken as a matter of fact to the extent that he contends the trial court was not aware of Petitioner's mental retardation at the time the trial court decided Petitioner's suppression motion. We note the following facts taken from the record. The hearing on the suppression motion was part of the hearing conducted on the Petitioner's Omnibus Pre-Trial Motion, which hearing occurred on October 20, 2009. ECF No. 15-3 ("[t]he Court accepts as credible the testimony of Trooper Lipniskis and rejects as not credible the testimony of Defendant Turner at the hearing held on Defendant's Omnibus Pre-trial Motions on October 20, 2009."). The trial court was aware of Petitioner's potential mental retardation as early as October 8, 2009 and, and certainly, no later than November 3, 2009, when the trial court had available to it an expert report by Dr. R. William Tallichet, Psy.D. who opined that Petitioner was mentally retarded within the meaning of Atkins. ECF No. 15-4 at 3 ("On October 8, 2009, Defendant petitioned the Court to set a pre-trial hearing to determine whether he was mentally retarded within the meaning of *Atkins*. The Court directed the Defendant to file an amended motion setting forth evidence raising an *Atkins* claim. On November 3, 2009, Defendant amended his motion to attach a report by Dr. R. William Tallichet, Psy.D., licensed psychologist. Dr. Tallichet opined Defendant was mentally retarded within the meaning of *Atkins*."). The trial

court did not issue its decision on Petitioner's suppression motion until November 6, 2009. ECF No. 15-3 at 1, 30.

Hence, the evidence of record affirmatively rebuts Petitioner's seeming contention that there was no evidence of Petitioner's retardation before the trial court when it made the decision on Petitioner's suppression motion. Nor can we accept Petitioner's suggestion that merely because Petitioner's mental retardation was not specifically mentioned in the trial court's November 6, 2009 opinion denying Petitioner's suppression motion, that the trial court did not consider such in its decision. The trial court specifically invoked the totality of the circumstances test, id. at 18, and specified that coming within the totality of the circumstances test is a consideration of "(4) the accused's physical and psychological state; and (5) any conditions which may serve to drain one's powers of resistance to suggestion and undermine one's self determination." Id. at 20. Presumably, the fact of Petitioner's mental retardation falls within these categories.

Furthermore, as a federal habeas court we must presume that the state trial court considered all of the factors necessary to make its decision because "the presumption is in all cases that the state courts will do what the Constitution and laws of the United States require." Gibbs v. Buck, 307 U.S. 66, 80 (1939). As recently explained:

> This is because a state court judgment of conviction carries with it a presumption of regularity in federal court. *Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d Cir. 1996) ("On collateral attack...., the state receives the presumption of regularity and all reasonable inferences.") (quoting *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993)); Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); *Schlette v. California*, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Given this presumption of regularity, it is petitioner's burden to establish, that his

constitutional rights were violated. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.").

Hagan v. Fisher, No. CV 13-1566, 2016 WL 3645202, at *9 (W.D. Pa. June 30, 2016).

Notwithstanding the foregoing, Petitioner argues that "the state courts focused entirely on police conduct and failed to consider the pertinent question of whether Trooper Lipniskis' tactics (regardless of how ineffective they may have been against a fully-functioning defendant) were sufficiently manipulative to overbear the will of a person <u>with Turner's characteristics</u>. It is clear from Turner's testimony at the suppression hearing [which, we note the trial court rejected as not credible, ECF No. 15-3 at 13] that he was terrified during the interrogation. After the trooper threw away his first statement, Turner simply did his best to write down what Lipniskis said had happened." ECF No. 3 at 16 – 17. To the extent that Petitioner contends merely because the trial court's opinion does not mention Petitioner's mental retardation and, therefore, the opinion is silent with respect to a consideration of "Turner's characteristics," it necessarily follows that the trial court, in fact, failed to consider Turner's characteristics, the argument is a losing argument for Petitioner. This is because, as recently explained:

> a silent record supports a state court conviction in federal habeas proceedings. *Washington v. Sobina*, 509 F.3d 613, 621 (3d Cir. 2007) ("Silence in the record is insufficient to overcome that presumption" under 28 U.S.C. § 2254(e)(1)); *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences.... His [i.e., habeas Petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden."). A silent state court record redounds to a habeas petitioner's detriment because the presumption of regularity or constitutionality of state court convictions and the presumptive correctness of factual findings under the AEDPA supply the necessary facts to the extent that they are not affirmatively present in the record. In other words, the presumption of regularity or of constitutionality attendant to state court convictions in federal habeas proceedings means that the federal habeas court presumes that what was required by the Constitution was done in the

> state courts and that what was forbidden by the Constitution was not done in the state court proceedings. It is up to a federal habeas petitioner to affirmatively show to the contrary. This, Petitioner has failed to do.

Hagan, 2016 WL 3645202, at *10. Petitioner herein affirmatively fails to demonstrate the trial court did not consider all of the factors that the trial court was required under the Constitution to do so in disposing of Petitioner's Fifth Amendment Miranda and coerced confession claims. Accordingly, Petitioner's Miranda and coerced confession claims fail.

### 4. Petitioner's Fourth Amendment Claim is not cognizable.

In the context of Ground One, Petitioner also attempts to raise a Fourth Amendment claim with respect to the suppression of his statement, contending that Petitioner was illegally seized and that the statements must be suppressed, apparently as the fruit of a poisonous tree. ECF No. 3 at 14 ("Any evidence acquired by the police through the exploitation of, or by means of, conduct unlawful under the Fourth Amendment is inadmissible in a criminal prosecution."). Any Fourth Amendment claim Petitioner may be raising does not provide a basis for the grant of federal habeas relief. Stone v. Powell, 428 U.S. 465, 494 (1976) (indicating that where state has provided full and fair hearing on Fourth Amendment issue, then federal court cannot entertain a claim in habeas proceedings based on alleged Fourth Amendment violations). Moreover, it is Petitioner's burden to show that the prohibition of Stone v. Powell is not applicable. Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001)("The petitioner bears the burden of proving that his case fits within the contours of the [Stone v. Powell] exception"); Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986); Doleman v. Muncy, 579 F.2d 1258, 1266 (4th Cir. 1978). On the record before this Court, Petitioner could not succeed to carry such a burden.

Accordingly, for the foregoing reasons, Ground One does not afford Petitioner relief.

### B. Ground Two Does Not Merit Relief.

In Ground Two, Petitioner contends that sentencing Petitioner to mandatory life without the possibility of parole violates the Eighth Amendment's bar against cruel and unusual punishment. Petitioner contends that the Equal Protection Clause of the United States Constitution requires that he be treated similarly to juveniles under Miller v. Alabama, 132 S. Ct. 2455 (2012) which held that juveniles who committed crimes as juveniles could not be automatically sentenced to life without the possibility of parole. ECF No. 3 at 18 ("That Appellant was 18 at the time of his offense does not matter because he had a tested IQ in the low-70's and was borderline mentally retarded. His brain was no more fully formed than the juveniles in *Miller* and he has the right to be similarly situated.").

It appears, based upon Attorney Knaresboro's Turner/Finley no-merit letter, that at some point, Petitioner raised this claim in his PCRA Petition. See ECF No. 16-1 at 7 (issue "a"); id. at 8 (issue "d"). In the Turner/Finley letter, Attorney Knaresboro briefly explained that the issue was meritless. Unfortunately, after Attorney Knaresboro was permitted to withdraw, and Petitioner was advised that he could proceed pro se or with privately retained counsel, in order to file an amended PCRA Petition, Petitioner did neither. Moreover, no appeal was thereafter filed. Accordingly, we have no state court opinion disposing of this claim.

Accordingly, providing *de novo* review of this claim, we find it meritless. The Equal Protection clause requires that the law treat similarly situated individuals similarly. Wilson v. Taylor, 515 F. Supp. 2d 469, 472 (D. Del. 2007) ("In order to raise a valid equal protection claim, a plaintiff must show that 'he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.' ") (quoting Dickens v. Taylor, 464 F. Supp.2d 341, 354–55 (D. Del. 2006)).

Petitioner contends that he is similarly situated to juveniles who, under <u>Miller v. Alabama</u>, cannot be automatically sentenced to life without the possibility of parole if they are convicted of a crime (which they committed while still a juvenile) which has a mandatory life sentence. However, the critical factor in <u>Miller</u> was the fact that "*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and **greater prospects for reform**, we explained, 'they are less deserving of the most severe punishments.'" <u>Miller</u>, 132 S. Ct. at 2464 (emphasis added). While Petitioner contends that as a person with mental retardation, his intellect is more akin to that of a juvenile, Petitioner fails to show that he is similarly situated to juveniles in the critical aspect that mentally retarded individuals share as a class with the class of juvenile convicts, <u>i.e.</u>, "greater prospects for reform." This is because whereas juveniles may yet mature in their intellectual and psychosocial development, the characteristic of being mentally retarded is a fairly stable characteristic over the life span of an individual with mental retardation. <u>Compare Miller</u>'s emphasis on the potential for reform of juveniles <u>with</u> <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432 (1985) (referring to individuals with mental retardation as "different, immutably so, in relevant respects"), *affirming in part and vacating in part*, <u>Cleburne Living Ctr., Inc. v. City of Cleburne, Texas</u>, 726 F.2d 191, 198 (5th Cir. 1984) ("the mentally retarded deserve special consideration because their condition is immutable. Dr. Phillip Roos explained at trial that mental retardation is 'irreversible.'").

We find that Petitioner fails to show that he is similarly situated to juveniles in the relevant characteristics such that <u>Miller v. Alabama</u> renders an automatic life sentence without the possibility of parole unconstitutional for those individuals with mental retardation. In light of this, we agree with the United States Court of Appeals for the Sixth Circuit:

Finally, we turn to Davis' sentence. He contends the district court's decision to sentence him to life imprisonment violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. In support of his argument, he turns to the Supreme Court's decisions in *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) and *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). He claims that the two cases, read together, suggest that "those with limited intellectual capacity cannot be subjected to the harshest penalties our society imposes," including the life imprisonment imposed upon him.

Davis asks us to engage in Eighth-Amendment alchemy by melding *Miller* and *Atkins* together to fashion some sort of alloyed caselaw that would shield him from a life sentence. We decline Davis' invitation to do so. *Miller* and *Atkins* had separate penological underpinnings. *Miller* and its predecessor, *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), largely honed in on the tension between the penological rationale of rehabilitation and the impossibility of achieving such a rationale in a life-without-parole scenario for juveniles. *See Miller*, 132 S.Ct. at 2465. *Atkins*, on the other hand, focused on a mentally-disabled offender's diminished capacity and the corresponding diminution of culpability. *See Atkins*, 536 U.S. at 318, 122 S.Ct. 2242. The two cases were motivated by different justifications and thus are incompatible for any sort of constitutional hybridization.

In short, Davis is not a juvenile, which precludes him from invoking *Miller* to ward off life imprisonment. *Atkins* is also of no avail, as it is apposite only when a mentally-disabled offender is sentenced to die, for "death is simply different." *See United States v. Moore*, 643 F.3d 451, 455 (6th Cir. 2011). Consequently, we discern no valid constitutional basis for vacating Davis' life sentence.

<u>United States v. Davis</u>, 531 F. App'x 601, 608 (6th Cir. 2013), *as amended* (Aug. 6, 2013).

Accordingly, Ground Two fails to merit any relief in these federal habeas proceedings.

**C. Ground Three Does Not Merit Relief.**

In Ground Three, Petitioner complains that his rights to due process were violated by the PCRA trial court when it again appointed Attorney Knaresboro to represent him during the PCRA proceedings, because appointing him as counsel, effectively precluded Attorney Knaresboro from raising any claims of his own ineffectiveness during the trial and direct appeal stages of Petitioner's conviction.

16

Ground Three cannot provide a basis for relief in these federal habeas proceedings because such claims of errors in the course of PCRA proceedings cannot serve as a basis for granting the writ of habeas corpus. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"); Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in collateral proceedings ... are not a proper basis for habeas relief from the original conviction."). Accordingly, Ground Three does not afford a basis for the granting of a writ of habeas corpus in these federal proceedings.

**D. Ground Four Does Not Merit Relief.**

In Ground Four, Petitioner argues that his PCRA counsel was ineffective for failing to raise the claim that trial counsel was ineffective for failing to adduce evidence of Petitioner's mental retardation during the guilt phase of Petitioner's trial so as to support a claim that Petitioner was not capable of forming the specific intent to kill which is required in order to support a first degree murder conviction.

We note that because Petitioner did not present to the state courts the claim that his trial counsel was ineffective for failing to adduce evidence of his mental retardation during the guilt phase of the trial, this claim of trial counsel's ineffectiveness is procedurally defaulted. Fowler v. Mooney, No. CV 14-1768, 2015 WL 7007772, at *8 (E.D. Pa. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 6955434 (E.D. Pa. Nov. 9, 2015) ("Petitioner's failure to present claims of the ineffectiveness of trial counsel to the Commonwealth's courts, in the first

instance, would ordinarily be a procedural default, as the petitioner must exhaust the state court's remedies first. To meet this exhaustion requirement, a petitioner must have fairly presented the claim to each available level of the state judicial system.") (citations omitted)).

In Ground Four, Petitioner may be invoking the ineffectiveness of PCRA counsel as cause to excuse his procedural default of his claim of trial counsel's ineffectiveness pursuant to Martinez v. Ryan, __ U.S.__, 132 S.Ct. 1309 (2012). However, we find that the claim of PCRA counsel's ineffectiveness is itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Petitioner could have raised this claim of PCRA counsel's ineffectiveness after the PCRA counsel's motion to withdraw was granted and Petitioner was informed that he had to either proceed pro se or retain private counsel. Petitioner did neither. Nor did he file an appeal from the PCRA trial court's order granting PCRA counsel's motion for leave to withdraw. Thus, the claim that PCRA counsel was ineffective for failing to raise the claim of trial counsel's ineffectiveness for not introducing evidence of Petitioner's mental retardation during the guilt phase of the trial has been procedurally defaulted and there can be no claim of cause because Petitioner alone is solely responsible for the procedural default of this claim of PCRA counsel's ineffectiveness. Nor, on this record can Petitioner make a claim of miscarriage of justice so as to excuse his procedural default. Accordingly, we find the claim of cause (in the form of PCRA counsel's ineffectiveness for failing to raise the claim of trial counsel's ineffectiveness concerning presentation of evidence of mental retardation) which Petitioner seeks to use to excuse the procedural default of Ground Four to have itself been procedurally defaulted by Petitioner due to

his not filing an Amended PCRA Petition and by not filing an appeal to the Superior Court in the PCRA proceedings.

Petitioner also suggests that cause to excuse the procedural default exists in the trial court's appointment of Attorney Knaresboro as counsel in the PCRA proceedings. ECF No. 3 at 38. However, because Petitioner did not file an appeal to the Superior Court after Attorney Knaresboro was granted leave to withdraw and the PCRA petition was dismissed, Petitioner failed to exhaust this claim of cause and thus, procedurally defaulted this claim of cause. Moreover, Petitioner cannot, on this record, establish a miscarriage of justice so as to excuse his procedural default. Accordingly, Ground Four does not establish a basis for habeas relief.

## V. CONCLUSION

For the reasons set forth herein, the Petition is denied. Because we find jurists of reason would not find the foregoing debatable, we deny a certificate of appealability.

BY THE COURT:

*s/ Maureen P. Kelly*
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Date: July 26, 2016

cc: Joshua Turner
JN-3230
SCI Greene
175 progress Drive
Waynesburg, PA 15370

All Counsel of Record via CM-ECF